UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                  Plaintiff,

STATE OF NEW YORK,

                                  Defendant.
------------------------------------------------------------------------X
RAYMOND O'TOOLE et al.,

                                  Plaintiffs,

ANDREW M. CUOMO et al.,

                                  Defendants.
------------------------------------------------------------------------X
RESIDENTS AND FAMILIES UNITED TO SAVE
OUR ADULT HOMES et al.,

                                  Plaintiffs,

HOWARD ZUCKER, M.D. et al.,

                                  Defendants.
------------------------------------------------------------------------X

**ORDER**

**13-CV-4165 (NGG) (RML)**

**13-CV-4166 (NGG) (RML)**

**16-CV-1683 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

      On January 16, 2013, the New York State Department of Health ("DOH") and the New York State Office of Mental Health ("OMH") promulgated regulations (the "Regulations") which, among others things: (1) prohibit "transitional adult homes"[1] from admitting any person whose admission will increase the mental health census (i.e. the percentage of residents with

---

[1] A "transitional adult home" is defined as an "adult home with a certified capacity of 80 beds or more in which 25 percent or more of the resident population are persons with serious mental illness." 11 N.Y.C.R.R. § 487.13(a)(1).

1

"serious mental illness"[2]) of a facility; and (2) prohibit psychiatric inpatient units of hospitals and freestanding psychiatric facilities licensed by OMH from discharging individuals with serious mental illness to transitional adult homes. See 14 N.Y.C.R.R. §§ 580.6, 582.6; 18 N.Y.C.R.R. §§ 487.4, 487.13. The Regulations are critical to achieving the goals of the Settlement Agreement entered into by the parties in United States v. New York, No. 13-CV-4165 (NGG) (RML), and O'Toole et al. v. Cuomo et al., No. 13-CV-4166 (NGG) (RML) (collectively the "DAI" action).[3]

Four separate lawsuits have been brought by various plaintiffs—including operators of New York state-licensed adult homes as well as adult home residents—challenging the validity of the Regulations: Residents and Families United to Save Our Homes v. Zucker ("Residents and Families"), No. 16-CV-1683 (NGG) (RER); Doe v. Zucker, Index No. 007079/2016 (N.Y. Sup. Ct. Albany Cty.); Oceanview Home for Adults, Inc. v. Zucker ("Oceanview v. Zucker"), Index No. 006012/2016 (N.Y. Sup. Ct. Albany Cty.); and Hedgewood Home for Adults, LLC v. Zucker, Index No. 052782/2016 (N.Y. Sup. Ct. Dutchess Cty.) (collectively, the "Regulations Actions").

---

[2] "Individuals with serious mental illness" are "individuals who meet criteria established by the commissioner of mental health, which shall be persons who have a designated diagnosis of mental illness under the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR, American Psychiatric Association, July 2000), and whose severity and duration of mental illness results in substantial functional disability." 11 N.Y.C.R.R. § 487.2(c).

[3] Notwithstanding the removal of Section O from the Settlement Agreement, the court has stated its view and reiterates now that enforcement of the Regulations is critical to achieving the goals of the Settlement Agreement. The Regulations limit the admission of individuals with serious mental illness into adult homes whose mental health census is 25 percent or more. If the Regulations are eliminated, it will open the front doors of the adult homes to individuals with serious mental illness. Without some mechanism for limiting admissions or quickly transitioning individuals who are willing and able to move into supported housing, the adult homes could easily revert to being warehouses for individuals with serious mental illness. The State has a continuing obligation—which extends beyond the instant cases—to provide services to individuals with disabilities "in the most integrated setting appropriate to the[ir] needs," 28 C.F.R. § 35.130(d), and to avoid "unjustified isolation" of individuals with disabilities, Olmstead v. L.C., 527 U.S. 581, 597 (1999).

Several current or former <u>DAI</u> class members—individuals with serious mental illness who reside in "impacted adult homes"[4]—are named plaintiffs in at least one of the Regulations Actions. The court refers to those individuals as the "Class Member Plaintiffs." Three of the Class Member Plaintiffs have been identified by name: Walter Roberts, Joseph Simon, and Lawrence Wong are class members in <u>DAI</u> and plaintiffs in <u>Residents and Families</u>. A fourth individual, Kenneth Przyjemski, is a plaintiff in <u>Residents and Families</u> and has been identified as a resident of a transitional adult home that is subject to the Regulations; however, it is unclear whether Przyjemski is a class member because the court does not know whether he resides in an impacted adult home. Four other anonymous plaintiffs in the Regulations Actions are also current or former class members: John Doe in <u>Doe v. Zucker</u>; and Resident AA, Resident BB, and Resident CC in <u>Oceanview v. Zucker</u>.

The court first notes that the interests of the Class Member Plaintiffs and the interests of the adult homes who are also plaintiffs in the Regulations Actions may not be synonymous. If their interests are in fact incongruent, this begs the question of whether these groups of plaintiffs can be jointly represented as an ethical matter. Moreover, the State has expressed concern that the Class Member Plaintiffs participating in <u>Residents and Families</u> are not voluntary and knowing participants in the litigation. (<u>See</u> Defs. Opp'n to Mot. to Remand (Dkt. 19-25 in No. 16-CV-1683) at 6 (noting that "it is far from clear that all—or even most—of these resident plaintiffs actually hold the views that the adult homes' paid representatives purport to ascribe to them").) In a deposition taken in December 2015, class member Walter Roberts testified that: (i) he did not recognize an affidavit with his signature that was submitted in the litigation; (ii) he did

---

[4] "Impacted adult homes" are adult homes "in New York City with certified capacities of 120 or more in which 25 percent or more of the residents or 25 residents, whichever is less, have serious mental illness." (2d Am. Stip. & Order of Settlement (Dkt. 112 in No. 13-CV-4165).)

3

not oppose the Regulations; and (iii) he did not believe that New York State had ever threatened to violate his rights. (See Ex. D to Defs. Opp'n (Dkt. 19-30 in No. 16-CV-1683).)[5]

In view of the fact that (1) there is a potential conflict of interest as among the plaintiffs in the Regulations Actions and (2) there appears to be a disconnect between at least one of the Class Member Plaintiffs and the claims in the Regulations Actions, the court determines that it is appropriate to appoint an guardian ad litem to protect the rights of the Class Member Plaintiffs.[6] In making this appointment, the court exercises its "inherent authority to manage [its] docket[] and courtroom[]." Dietz v. Bouldin, 136 S. Ct. 1885, 1892 (2016); cf. James v. New York, 415 F. App'x 295, 297 (2d Cir. 2011) (summary order) ("Federal courts have inherent, discretionary power to appoint a guardian ad litem when it appears that an incompetent person's general representative has interests which may conflict with those of the person he is supposed to represent." (citing Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist., 873 F.2d 25, 30 (2d Cir. 1989)).

The court therefore APPOINTS Katya Jestin of Jenner & Block LLP to serve as a guardian ad litem for the Class Member Plaintiffs. Jestin and her staff, who are donating their time and services pro bono, are INSTRUCTED to interview the Class Member Plaintiffs and, by no later than October 16, 2017, provide the court with a report under seal detailing: (1) the circumstances of the Class Member Plaintiffs' participation in the Regulations Actions; and (2) whether each of the Class Member Plaintiffs understands the purpose of and their role in the litigation. The guardian ad litem and her staff may take steps including, but not limited to,

---

[5] That exhibit is attached as Exhibit 1 to this order.

[6] At least one Court of Appeals has upheld a district court's appointment of a guardian ad litem to protect the interests of a person who was already represented by counsel. See Fonner v. Fairfax Cty., Va., 415 F.3d 325, 330-31 (4th Cir. 2005) (affirming district court's appointment of a guardian ad litem to determine whether a mentally retarded resident of a group home (who was represented by counsel) was a willing participant in the litigation).

(1) employing the services of a psychiatric professional if deemed necessary by the guardian ad litem; (2) interviewing relevant third parties in addition to Class Member Plaintiffs; and (3) reporting to the court as is required to carry out her duties under this order. The court DIRECTS the Independent Reviewer to make himself available to the guardian ad litem in order to provide historical information related to the status of these cases.

The court further DIRECTS Jeffrey Sherrin, counsel for the plaintiffs in the Regulations Actions, to provide the court with (1) the names of the anonymous Class Member Plaintiffs; and (2) contact information for each of the Class Member Plaintiffs. Sherrin shall provide this information to the court <u>ex parte</u> and under seal by no later than June 23, 2017. The court will then supply the Class Member Plaintiffs' information only to the guardian ad litem.

SO ORDERED.

Dated: Brooklyn, New York  
      June 15, 2017

/s Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge