IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RESIDENTS AND FAMILIES UNITED TO SAVE OUR ADULT HOMES, et al., <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> HOWARD A. ZUCKER, M.D., et al., <br><br> Defendants-Respondents. | No. 16-cv-1683 (NGG) (RER) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>PROPOSED INTERVENORS' MOTION TO INTERVENE</u>**

Glenn J. Pogust
Michael A. Lynn
Kyle D. Gooch
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY  10019-9710
T:  (212) 836-8000
F:  (212) 836-8689

*Attorneys for the Proposed Intervenors*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.      The Proposed Intervenors Clearly Satisfy the Standard for Intervention as of Right ........ 2

        A.      The Motion is Timely Because the Existing Parties Will Not be Prejudiced by the Delay of the Proposed Intervenors in Filing Their Motion ............................... 2

        B.      Proposed Intervenors Assert a Sufficient Interest in Receiving Qualified Public Services in Accordance with the Integration Mandate of the ADA ........................ 5

        C.      Proposed Intervenors' Interest Is Not Adequately Represented ............................. 8

II.     The Proposed Intervenors Should be Granted Permission to Intervene ............................ 8

CONCLUSION ................................................................................................................................ 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Benjamin v. Dep't of Public Welfare of Pa.*,
    267 F.R.D. 456 (M.D. Pa 2010) .................................................................................................7

*Floyd v. City of N.Y.*,
    302 F.R.D. 69 (S.D.N.Y. 2014) .............................................................................................2, 3

*Laroe Estates, Inc. v. Town of Chester*,
    828 F.3d 60 (2d Cir. 2016) ....................................................................................................3, 4

*Olmstead v. L.C.*,
    527 U.S. 581 (1999) ..............................................................................................................5, 6

*Oneida Indian Nation of Wis. v. State of N.Y.*,
    732 F.2d 261 (2d Cir. 1984) .....................................................................................................7

**Rules**

Fed. R. Civ. P. 24(a)(2) ...............................................................................................................2, 9

Fed. R. Civ. P. 24(b)(1)(B) ..........................................................................................................8, 9

**Other Authorities**

28 C.F.R. § 35.130(d) ......................................................................................................................6

ii

The Proposed Intervenors[1] submit this reply memorandum of law in further support of their motion to intervene in this proceeding.

## PRELIMINARY STATEMENT

In opposing this motion to intervene, the adult home industry uses the same strategy it has used for years, attempting to silence adult home residents who seek to advocate for their rights and the protections provided by the Regulations and the Federal Settlement. Plaintiffs rely on unsupported contentions of fact and law to argue that the Proposed Intervenors should not be permitted to intervene in this proceeding, despite the fact that they stand to be personally affected by its outcome.

While contending without basis that the Proposed Intervenors' participation in this action would cause delay, Plaintiffs insist that this Court engage in a lengthy sideshow of discovery and evidentiary hearings—all so that they can attempt to demonstrate that the Proposed Intervenors have no right to participate in this action. If the Proposed Intervenors were seeking some form of affirmative relief from Plaintiffs, there might be some colorable justification for seeking discovery as a prerequisite to permitting intervention, but that is simply not the case here. The Proposed Intervenors seek to participate as Intervenor-Defendants in this action merely to protect their own rights and to voice their interests in preserving the existing Regulations. They will not seek to duplicate any discovery that has previously been taken, nor will they seek to submit additional briefing regarding any of the motions currently pending in this action. As a result, the only discernable purpose for the requested discovery and evidentiary hearings is to deny the

---

[1] Terms not defined in this reply memorandum are defined in the Proposed Intervenors' moving memorandum.

1

Proposed Intervenors—and indeed any adult home resident who takes a position opposite that advanced by Plaintiffs—their right to be heard.

As demonstrated below, Plaintiffs have failed to come forward with a valid legal basis to deny the Proposed Intervenors' motion; therefore, that motion should be granted.

## ARGUMENT

**I.  THE PROPOSED INTERVENORS CLEARLY SATISFY THE STANDARD FOR INTERVENTION AS OF RIGHT**

Plaintiffs do not dispute that a district court reviewing an application for intervention under Rule 24(a)(2) need only consider: (1) the timeliness of the motion; (2) whether the applicant asserts a sufficient interest (3) whether the denial of the applicant's motion may impair or impede their ability to protect such interest; and (4) whether the applicant's interest is adequately represented by existing parties.  *See* Opp. at 2; Moving Br. at 8–10.

**A.  The Motion is Timely Because the Existing Parties Will Not be Prejudiced by the Delay of the Proposed Intervenors in Filing Their Motion**

This motion to intervene is timely because (1) the earliest point that the Proposed Intervenors could have learned of the risks to their interest in the litigation was on March 29, 2017, (2) the Proposed Intervenors' approximately seven month delay in filing will not prejudice the existing parties, and (3) the Proposed Intervenors would be prejudiced by the denial of their motion given Ms. Vilá's limited intervention, the stipulated TRO in *Doe v. Zucker* and the OAG's prior motion to withdraw as counsel.

Plaintiffs contend that the Proposed Intervenors have known of their interests in this litigation, and any attendant risks to such interests, for years.  This contention is unavailing, as the "intervention clock [does not] start to run [until] the moment the [applicants] became aware or should have become aware that they had interests in the subject matter of the litigation *not otherwise protected by the existing parties to the lawsuit*." *Floyd v. City of N.Y.*, 302 F.R.D. 69,

2

84–85 (S.D.N.Y. 2014) (emphasis added). While Plaintiffs assert that the Proposed Intervenors should have learned of the risk to their interest immediately upon moving into their adult homes (in 2013 and 2015, respectively), the Proposed Intervenors could not have reasonably perceived that their interests in this action were unprotected, given that ten similarly situated intervenors moved to intervene in this case in October 2014 and were granted permission to intervene through a so-ordered stipulation in March 2015. *See* Moving Br. 10 & n.10.[2] While the number of similarly situated intervenors dwindled down to one—Ms. Vilá—it was not until March 29, 2017 that Plaintiffs' counsel threatened to seek the dismissal of Ms. Vilá, potentially leaving no intervenors left to represent the Proposed Intervenors' interests in this action. Plaintiffs' argument that they *could* have moved to dismiss Ms. Vilá long ago (Opp. at 6) is beside the point; it was not until March 29, 2017 that they *actually* threatened to do so.

Plaintiffs further argue that the Proposed Intervenors' participation in the litigation will "needlessly delay its resolution," referencing the efforts of the Proposed Intervenors to protect their confidential medical records, to prevent unlawful retaliation,[3] and to facilitate the removal and transfer of a related case to this Court. *See* Opp. at 7-9. Plaintiffs' argument is essentially that the existing parties will be prejudiced by Proposed Intervenors *participation* in the action. But that is not the standard. The question is whether the existing parties will be prejudiced by the Proposed Intervenors' delay in filing their motion to intervene. *See Laroe Estates, Inc. v.*

---

[2] "Opp." refers to Memorandum of Law in Opposition to Motion to Intervene, dated October 27, 2017; "Moving Br." refers to the Memorandum of Law in Support of Proposed Intervenors' Motion to Intervene, dated October 6, 2017.

[3] Indeed, rather than cause unnecessary delay, Proposed Intervenors withdrew their application for a TRO when the alleged harassment ceased and based upon the representations of counsel for the Adult Home Plaintiff-Petitioners that the adult home residents who choose to participate in this or in related proceedings will not be subjected to harassment or retaliation by the owners or operators of the adult homes where they reside. *See* Letter Withdrawing Motion for Preliminary Injunction filed September 22, 2017 (ECF No. 70).

*Town of Chester*, 828 F.3d 60, 67 (2d Cir. 2016) *overruled on other grounds by Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017).

Plaintiffs' opposition simply provides no basis for this Court to conclude that permitting intervention after a delay of approximately seven months would cause any prejudice, especially when considering that the Proposed Intervenors' delay has been due to their efforts to protect their interests in one of the many collateral proceedings orchestrated by the adult home industry and its longtime counsel. *See* Moving Br. at 11–13 & n.11; Opp. at 6–7. Plaintiffs make much of the fact that, in seeking to protect their interests, the Proposed Intervenors have "burdened the existing parties . . . with additional . . . work," but Plaintiffs fail to show how this outcome would have been any different had the Proposed Intervenors filed their motion earlier.[4]

Finally, Plaintiffs argue that the Proposed Intervenors' participation in this case will necessarily require that Plaintiffs pursue "at a minimum, discovery of those medical, mental health, social and housing records as well as descriptions of each Proposed Intervenor, in order to challenge the claims Proposed Intervenors have made." Opp. at 8. But Plaintiffs never articulate why such discovery has any relevance to the right of the Proposed Intervenors—who have asserted no claims against any Plaintiff—to be heard. Moreover, any such delay would be caused solely by Plaintiffs' spurious demand for extensive and unnecessary discovery.[5]

---

[4] It should be noted that Defendants have made no such objection and have responded to this motion in support of the proposed intervention.

[5] Plaintiffs' insistence that a guardian ad litem be appointed for the Proposed Intervenors is equally spurious. *See* Opp. at 23–25. Unlike Plaintiffs' counsel, who purports to represent both the adult home industry and several adult home residents, pro bono counsel for the Proposed Intervenors have no potential conflicts of interest. There is no industry group funding the representation of the Proposed Intervenors' counsel, whose sole interest is protecting the rights of their pro bono clients.

4

Contrary to Plaintiffs' contention, the Proposed Intervenors' reasons for intervening in this litigation constitute more than simple "dissatisfaction" with the State's defense of the Regulations. *See* Opp. at 10. As set forth in their moving brief, (at 13–14), and given Ms. Vila's limited intervention in this case, the entry of the stipulated TRO in *Doe* and the OAG's motion to withdraw as counsel for the State Defendants threatens to leave the Proposed Intervenors' interest in this litigation unprotected. This is especially so given that that Ms. Vilá is the last remaining Initial Intervenor in the case and Plaintiffs' counsel has indicated on at least two occasions that he plans to seek her dismissal as an Intervenor. *See* Moving Br. at 11. Plaintiffs' wide-ranging arguments seeking to minimize the Proposed Intervenors personal stake in this litigation notwithstanding, *see* Opp. at 11, the Proposed Intervenors will either personally bear the brunt of the nullification of the Regulations that Plaintiffs seek to eliminate or reap the benefit of their enforcement. For these reasons, the Proposed Intervenors would be severely prejudiced if their motion to intervene is denied.

### B. Proposed Intervenors Assert a Sufficient Interest in Receiving Qualified Public Services in Accordance with the Integration Mandate of the ADA

Plaintiffs erroneously contend that the Proposed Intervenors' interest in this action is based solely on the fact that the Regulations they seek to support provide them the opportunity to transition into supported housing. Opp. at 14. Rather, the Proposed Intervenors assert an interest, secured by *Olmstead v. L.C.*, 527 U.S. 581 (1999), "in receiving the public services to which they are entitled in the most integrated setting appropriate to their needs." The Regulations and the Federal Settlement work in concert to remedy the State's *Olmstead* problem. If the Regulations are invalidated in this proceeding, as Plaintiffs request, the adult homes would remain *de facto* psychiatric institutions, where residents with serious mental illnesses are essentially warehoused in adult homes and segregated from the community.

While Plaintiffs contend that "[t]he nullification of the . . . Regulations would have no effect on the State's obligations to the Plaintiff Class under the Federal Settlement," Opp. at 14, that is not the considered view of this Court, and for good reason:

> Notwithstanding the removal of Section O from the Settlement Agreement, the court has stated its view and reiterates now that the enforcement of the Regulations is critical to achieving the goals of the Settlement Agreement. The Regulations limit the admission of individuals with serious mental illness into adult homes whose mental health census is 25 percent or more. If the Regulations are eliminated, it will open the front doors of the adult homes to individuals with serious mental illness. Without some mechanism for limiting admissions or quickly transitioning individuals who are willing and able to move into supported housing, the adult homes could easily revert to being warehouses for individuals with serious mental illness. The State has a continuing obligation—which extends beyond the instant cases—to provide services to individuals with disabilities "in the most integrated setting appropriate to the[ir] needs," 28 C.F.R. § 35.130(d), and to avoid "unjustified isolation" of individuals with disabilities, Olmstead v. L.C., 527 U.S. 581, 597 (1999).

Ex. 1, at 2 n.3.[6] Plaintiffs nevertheless attempt to avoid this clear statement of the Proposed Intervenors' interest by characterizing their interest as discriminatory, general and ambiguous. *See* Opp. at 13, 16–18. This contention completely misses the mark. As this Court stated, adult home residents such as the Proposed Intervenors have an interest in receiving the public services to which they are entitled in the most integrated setting appropriate to their needs and to avoid unjust isolation. In particular, the worsening of the *Olmstead* violation with the further entry of people with serious mental illness into adult homes continues to cause a greater concentration of people with serious mental illness in those adult homes. In the absence of enforcement of the Regulations, therefore, re-opening the "front door" to an unchecked influx of people with serious mental illness necessarily causes the Proposed Intervenors—and others in similar circumstances—to become more isolated and less integrated into the community. In essence, the

---

[6] All references to "Ex." are to the exhibits attached to the accompanying Reply Declaration of Glenn J. Pogust dated November 7, 2017.

6

Proposed Intervenors' interest in this case is not discriminatory, but rather, an interest in being free from discrimination on the basis of their mental disability.

Plaintiffs' reliance on *Benjamin v. Dep't of Public Welfare of Pa.*, 267 F.R.D. 456 (M.D. Pa. 2010), *aff'd*, 432 F. App'x 94 (3d Cir. 2011), is misplaced. There, the plaintiffs represented a certified class of residents of certain Pennsylvania state facilities who "would not oppose" community placement. A group of residents who *did* oppose community placement for themselves filed a motion to intervene. The court held that the proposed intervenors failed to demonstrate a "significantly protectable" interest in the suit because the class definition "specifically exclude[d]" them, and therefore the outcome of the suit would not affect their own choice of whether to stay in institutional care or be placed in the community. *Id.* at 460–62. Here, unlike in *Benjamin*, none of the Proposed Intervenors are class representatives seeking relief on behalf of a narrowly defined class. Instead, it is Plaintiffs who seek to nullify the Regulations, which, as previously discussed, would necessarily affect residents such as the Proposed Intervenors.

Moreover, Plaintiffs denigrate the Proposed Intervenors' interests in this litigation as nothing more than "not wanting [the State] to lose." As set forth in the Proposed Intervenors' moving brief, however, a final judgment entered by this Court finding the Regulations unlawful or unconstitutional would, as a practical matter, severely limit the Proposed Intervenors' ability to defend the Regulations and to secure their rights under the ADA to receive their public services in the most integrated setting appropriate to their needs. The potential impairment of those rights is more than sufficient to demonstrate the legitimacy of their interest. *See Oneida Indian Nation of Wis. v. State of N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984) (emphasis in original).

7

### C. Proposed Intervenors' Interest Is Not Adequately Represented

As previously discussed, the Proposed Intervenors have amply demonstrated particular circumstances to show that their interests in this litigation are inadequately represented. *See supra* 4–5; Moving Br. at 13–14, 17. Plaintiffs' assertion that the Proposed Intervenors' claims of inadequate representation amount to nothing more than differences in litigation motives or tactics is simply untrue. The State's consent to the entry of the stipulated TRO in *Doe*, followed shortly thereafter by the OAG's motion to withdraw as counsel for the State Defendants, is more than sufficient to demonstrate that Proposed Intervenors' interests in this litigation are inadequately represented. *See* Moving Br. at 13–14. This is particularly relevant in light of the limited intervention of Ms. Vilá. While the Proposed Intervenors believe that current counsel for the State Defendants have been forceful advocates for the preservation of the Regulations, the prior conduct of certain principals of the State Defendants themselves led to the TRO that has suspended the protections of the Regulations to the detriment of the Proposed Intervenors, and there is no guarantee that, notwithstanding the current efforts of their counsel, the principals of the State Defendants will continue to take positions intended to enforce the Regulations and implement the objectives of the Federal Settlement.

### II. THE PROPOSED INTERVENORS SHOULD BE GRANTED PERMISSION TO INTERVENE

As set forth in their moving brief, even if the Proposed Intervenors were not entitled to intervene as a matter of right, this Court should exercise its discretion to grant intervention pursuant to Fed. R. Civ. P. 24(b)(1)(B), which permits intervention, upon timely motion, when an applicant "has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention is left to the sound discretion of the trial court, and a reviewing court's analysis for permissive intervention is informed by the same four factors considered in

connection with motions for intervention as of right.[7] Moving Br. at 17–18. Plaintiffs' opposition amounts to an argument that the Proposed Intervenors cannot contribute to the Court's understanding of the case because they do not currently seek to inject any additional claims or factual issues in the case. *See* Opp. at 22–23. But that misses the point. As current residents of adult homes, Proposed Intervenors are uniquely positioned to provide insight regarding the consequences of Plaintiffs' efforts to nullify the Regulations, which is more than sufficient to meet the standard of Rule 24(b).

## CONCLUSION

For the foregoing reasons and for the reasons set forth in their moving memorandum of law, the Proposed Intervenors request that the Court grant their motion to intervene as party-respondents in support of the regulations challenged in this proceeding either (i) as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2), or (ii) alternatively, upon this Court's permission pursuant to Fed. R. Civ. P. 24(b)(1)(B), as well as granting whatever other and further relief this Court deems just and proper.

---

[7] With this in mind, see Section I.A for the Proposed Intervenors' arguments in favor of timeliness, and to the extent relevant, see Section I.B–C, for their remaining arguments in support of intervention of right. In addition, see Section I.A–D of the Proposed Intervenors moving brief for their arguments in support of intervention of right.

Dated:  November 7, 2017	Respectfully submitted,

                                              **ARNOLD & PORTER KAYE SCHOLER LLP**

By:  */s/ Glenn J. Pogust*
      Glenn J. Pogust
      Kyle D. Gooch
      Michael A. Lynn
      250 West 55th Street
      New York, NY 10019-9710
      T:  (212) 836-8000
      F:  (212) 836-8689

*Attorneys for the Proposed Intervenors*